ADAM GORDON
United States Attorney
FRANCISCO A. NAGEL
Assistant U.S. Attorney
Illinois Bar No. 6321196
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6745
Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
MAY 21 2026
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DANIEL ZAMBRANO (2),<br>Defendant. | Case No. 25-CR-3190-BJC<br><br>**PLEA AGREEMENT** |

IT IS HEREBY AGREED between plaintiff, UNITED STATES OF AMERICA, through its counsel, Adam Gordon, United States Attorney, and Francisco A. Nagel, Assistant United States Attorney, and defendant, DANIEL ZAMBRANO, with the advice and consent of Hector Jesus Tamayo, counsel for defendant, as follows:

//

//

//

//

//

//

//

# I

## THE PLEA

A. THE CHARGE

Defendant agrees to waive indictment and plead guilty to Count 1, Count 3, and Count 5 of a Superseding Information charging Defendant with:

Count 1

> Beginning no later than on or about June 12, 2024, and continuing through on or about July 15, 2025, within the Southern District of California and elsewhere, defendant DANIEL ZAMBRANO not being licensed as an importer, manufacturer, and dealer of firearms, willfully engaged in the business of dealing in firearms; all in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

Count 3

> On or about September 19, 2024, within the Southern District of California, defendant DANIEL ZAMBRANO did knowingly possess a machinegun, to wit: an unserialized, 3D-printed multi-caliber machinegun, which is a machinegun as defined in Title 26, United States Code, Section 5845(b), all in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

Count 5

> Beginning on a date unknown and continuing up to and including April 9, 2025, within the Southern District of California, defendants DANIEL ZAMBRANO and RUBEN IVAN RUBIO did knowingly and intentionally conspire with each other and with other persons known and unknown, to distribute 5 grams and more of methamphetamine (actual), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

> **This plea agreement is part of a "package" disposition. In order for Defendant to receive the benefit of this agreement, codefendant Ruben Ivan Rubio also must plead guilty at the same time. See Section VI.E. below.**

B. FORFEITURE

Defendant further agrees to the administrative and/or civil forfeiture of all properties seized in connection with this case which



Def. Initials DZ

defendant agrees are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881. Defendant further waives defendant's right to receive timely notice of administrative forfeiture as set forth in 18 U.S.C. § 983(a) and waives receipt of all notice of forfeiture in this and all other administrative and civil proceedings. Defendant waives and disclaims defendant's interest, if any, in the properties to be forfeited as described above. Defendant further agrees not to contest or to assist any other person or entity in contesting the forfeiture of the property(ies) seized in connection with this case. By signing this plea agreement defendant is hereby withdrawing any and all claims and any and all petitions relating to or arising from the seizures and forfeiture of properties in connection with this case.

C. NON-PROSECUTION OF TEN-YEAR MANDATORY MINIMUM SENTENCE

The Government agrees not to prosecute Defendant with an offense under Title 21 that carries a ten-year mandatory minimum sentence for the conduct described herein unless defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If defendant breaches this agreement or the guilty plea is set aside, Section XII below shall apply.

D. DISMISSAL OF THE REMAINING COUNTS

The Government agrees to (1) move to dismiss the remaining counts without prejudice when defendant is sentenced, and (2) not prosecute defendant thereafter on such dismissed charge(s) unless defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If defendant breaches this agreement or the guilty plea is set aside, Section XII below shall apply.



Def. Initials DZ

## II

## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED

The offenses to which Defendant is pleading guilty have the following elements:

As to Count 1:

1. Defendant was willfully engaged in the business of dealing in firearms between June 12, 2024, and July 15, 2025, and

2. Defendant did not then have a license as a firearm dealer.

As to Count 3:

1. Defendant possessed a machinegun; and

2. Defendant knew that it was a machinegun.

As to Count 5:

1. Beginning on or about a date unknown and ending on or about April 9, 2025, there was an agreement between two or more persons to distribute 5 grams and more of methamphetamine (actual) or some other federally controlled substance; and

2. Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

In addition, for the purposes of sentencing, the Government would have to prove, beyond a reasonable doubt, that the amount of methamphetamine (actual) involved in the offense was at least 5 grams of methamphetamine (actual).

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:



Def. Initials DZ

**Count 1**

1. Defendant knowingly sold the following items to ATF undercover agents on the following dates within the Southern District of California, knowing that the items would then be transported to Mexico:

   a. **June 12, 2024:** two unserialized privately manufactured 9mm pistols; and one unserialized privately manufactured 5.56 caliber rifle, in exchange for $3,600.

   b. **August 14, 2024:** one unserialized, multi-caliber, short-barreled rifle (9″ barrel length and 24″ overall length); one unserialized privately manufactured 9mm pistol; one Smuth & Wesson Model M&P 9 Shield Plus pistol bearing S/N JNJ2814; one Glock Inc. Model 21 pistol bearing S/N CGU909; one Taurus Model G2C pistol bearing S/N 1C066817, in exchange for $6,500.

   c. **August 22, 2024:** one unserialized privately manufactured multi-caliber pistol; one Glock .22 caliber pistol bearing S/N AEHL618; four firearm magazines; 25 rounds of Lake City .223 caliber ammunition; and 82 rounds of Remington .22 caliber ammunition, in exchange for $2,600.

   d. **September 19, 2024:** two unserialized privately manufactured 9mm pistols; one unserialized 3-D printed multi-caliber short-barreled rifle machinegun (9″ barrel length and 27.5″ overall length); and one unserialized privately manufactured 3D-printed multi-caliber short-barreled rifle (7″ barrel length and 25″ overall length), in exchange for $6,300.

   e. **October 28, 2024:** five unserialized privately manufactured 3-D printed 9mm pistols; one unserialized privately manufactured 3-D printed multi-caliber, short-barreled rifle (9.25″ barrel length and 29″ overall length); one unserialized privately manufactured 3-D printed multi-caliber, short-barreled rifle (7″ barrel length and 25″ overall length); and three unserialized privately manufactured 3-D printed multi-caliber rifles, in exchange for $10,000.



Def. Initials DL

f. **March 5, 2025:** one Riley Defense, RAK 47, 7.62 rifle bearing S/N 10981; one unserialized privately manufactured .300 blackout rifle; one Aero Precision AP15, .223 short-barreled rifle machinegun with an obliterated serial number (6.5″ barrel length and 25″ overall length); three rifle magazines; and 70 rounds of assorted ammunition, in exchange for $5,000.

g. **April 9, 2025:** one unserialized privately-manufactured 5.56 caliber rifle; one unserialized privately manufactured .223 caliber rifle; one PAC West Arms Commando 5.56 caliber short-barreled rifle bearing S/N 43147 (12″ barrel length and 30″ overall); one Aero Precision X15 multi-caliber short-barreled rifle with an obliterated S/N (9.5″ barrel length and 28.5″ overall); one HS Product Springfield Armory XD9 9mm pistol bearing SN XD950337; one unserialized privately manufactured 9mm pistol; 114 rounds of assorted ammunition; and other miscellaneous firearms parts and accessories, in exchange for $7,800.

h. **May 19, 2025:** one Iver Johnson, Safety Automatic, .38 caliber rifle bearing S/N 2208; one Ruger 10/22 Carbine, .22 caliber rifle bearing S/N 113-47204; one Kaiser Defense KR5, 5.56 caliber rifle bearing S/N 05960; one unserialized privately manufactured 308 caliber rifle; and 90 rounds of assorted ammunition, in exchange for $4,100.

i. **July 15, 2025:** one Smith & Wesson 6906 9mm pistol bearing S/N TDA2549; one Glock 21Gen4 .45 pistol bearing S/N AGKL487; one Glock 17 9mm pistol bearing S/N BG5B031; one Glock 42 .380 pistol bearing S/N ABHU798; one Taurus G3XL 9mm pistol bearing S/N ADB912967; one privately manufactured 9mm pistol bearing generic S/N 1AA2233 on the frame with no other make or model markings; one unserialized privately manufactured 9mm pistol; one Plumcrazy GenII multi-caliber rifle bearing S/N Z09061; one Anderson Manufacturing AM-15 multi-caliber rifle bearing S/N 23084843; one Anderson Manufactured AM-15 multi-caliber rifle bearing S/N 24028094; one Palmetto State Armory PA-15 multi-caliber rifle bearing S/N SCNL251056; one Century Arms International VSKA 7.62 rifle bearing S/N SV7165586; one Century Arms



Def. Initials PZ

International BFT47 7.62 rifle bearing S/N BFT47025590; one unserialized privately manufactured 3D-printed .223 rifle; and 149 rounds of assorted ammunition, in exchange for thousands of dollars.

2. Defendant sold the firearms intending to make a profit.

3. At the time Defendant engaged in the above-mentioned sales, Defendant did not have a license to be a firearms dealer or manufacturer.

**Count 3**

4. On or about September 19, 2024, Defendant knowingly possessed one unserialized, 3D-printed multi-caliber machinegun, within the Southern District of California, that is a "machinegun" as defined under federal law.

5. At the time Defendant possessed the machinegun, Defendant knew that the firearm was a machinegun or was aware of the essential characteristics of the firearm making it a "machinegun" as defined under federal law.

**Count 5**

6. Beginning on a date unknown and ending on or about April 9, 2025, there was an agreement between two or more persons to distribute 5 grams and more of methamphetamine (actual) or some other federally controlled substance.

7. Defendant joined in the agreement knowing of its purpose and intending to help accomplish that goal.

8. On April 9, 2025, within the Southern District of California, Defendant, along with codefendant Ruben Ivan RUBIO and at least one other co-conspirator, in furtherance of the conspiracy sold to undercover ATF agents 2.2 kilograms of actual methamphetamine, in exchange for $5,000.

## III

## PENALTIES

The crime to which defendant is pleading guilty carries the following penalties:



Def. Initials DZ

binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, defendant will not withdraw the plea.

**X**

**PARTIES' SENTENCING RECOMMENDATIONS**

A. SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures for Counts 2, 4, and 6:

Counts 1 and 3*,**

| | | |
|---|---|---|
| 1. | Base Offense Level [USSG § 2K2.1(a)(5)] | 18 |
| 2. | Number of Firearms (25-99) [USSG § 2K2.1(b)(1)(C)] | +6 |
| 3. | Unserialized Firearm [USSG § 2K2.1(b)(4)(B)(ii)] | +4 |
| 4. | Transfer of Firearms Knowing Future Transport Out of United States [USSG § 2K2.1(b)(7)(A)] | +4 |
| | Total Offense Level Counts 1 and 3 | 32 |

Count 5**

| | | |
|---|---|---|
| 1. | Base Offense Level [USSG § 2D1.1(c)(2)] | 36 |
| 2. | Possess dangerous weapon [USSG § 2D1.1(b)(1)] | +2 |
| | Total Offense Level Count 5 | 38 |

*The parties agree that Counts 1 and 3 should group together under USSG § 3D1.2(d) because the offense level is determined largely on the



Def. Initials DZ

As to Count 1:

A. A maximum of 5 years in prison;

B. A maximum $250,000 fine;

C. A mandatory special assessment of $100 per count;

D. A term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E. Forfeiture of all firearms and ammunition involved in the offense.

As to Count 3:

A. A maximum of 15 years in prison;

B. A maximum $250,000 fine;

C. A mandatory special assessment of $100 per count;

D. A term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E. Forfeiture of all firearms and ammunition involved in the offense.

As to Count 5:

A. A maximum 40 years in prison, and a mandatory minimum 5 years;

B. A maximum $5,000,000 fine;

C. A mandatory special assessment of $100 per count;

D. A term of supervised release of at least 4 years and up to life. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

E. Possible ineligibility for certain federal benefits.



Def. Initials DC

## IV

## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages of trial;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of defendant; and

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant also may be denied United States citizenship and admission to the United States in the future.

## V

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of defendant known to the undersigned prosecutor in this case has been turned over to defendant. The Government will continue to provide such information establishing the factual innocence of defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty, defendant will not be provided this



Def. Initials DZ

information, if any, and defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or file a collateral attack on the existence of this information.

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw defendant's guilty plea;

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the court;

C. No one has threatened defendant or defendant's family to induce this guilty plea; and

D. Defendant is pleading guilty because defendant is guilty and for no other reason.

E. The package contemplated by this agreement is part of a "package" disposition with Codefendant Ruben Ivan Rubio. If any defendant in the package fails to perform or breaches any part of their agreement, no defendant can withdraw their guilty plea, but the Government is relieved from and not bound by any terms in any agreements in the package.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will



Def. Initials DZ

bring this plea agreement to the attention of other authorities if requested by defendant.

VIII

**APPLICABILITY OF SENTENCING GUIDELINES**

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. **Defendant agrees to request that a presentence report be prepared.** Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

IX

**SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what defendant's sentence will be. The Government has not made and will not make any representation as to what sentence defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is **not binding on the Court**. Any recommendation made by the Government at sentencing is also not



Def. Initials DZ

basis of the quantity of a substance involved or some other measure of aggregate harm under USSG § 3D1.2(d).

**The parties agree that the otherwise resulting groups for the gun counts and drug count group together under USSG § 3D1.2(c) because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Accordingly, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, and Adjustments to be used to impose the actual sentence.

| | | |
|---|---|---|
| 1. | Base Offense Level [USSG § 2D1.1(c)(2)] | 36 |
| 2. | Possession of a dangerous weapon [USSG § 2D1.1(b)(1)] | +2 |
| 3. | Acceptance of Responsibility [USSG § 3E1.1] | -3 |
| | Total Adjusted Offense Level | 35 |

B. <u>ACCEPTANCE OF RESPONSIBILITY</u>

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2. Falsely denies prior criminal conduct or convictions;

3. Is untruthful with the Government, the Court or probation officer; or

4. Breaches this plea agreement in any way.



Def. Initials DZ

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

The parties may request or recommend additional adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D. NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have no agreement as to defendant's Criminal History Category, except that, if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to USSG § 4B1.1(b).

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. RECOMMENDATION REGARDING CUSTODY

Pursuant to the § 3553(a) factors, the United States will recommend that defendant be sentenced to the greater of: the low end of the advisory Guidelines range as calculated by the Government after incorporating a downward variance under 18 U.S.C. § 3553(a) that is the equivalent of one level under the Sentencing Guidelines[1], the statutory mandatory minimum, if applicable, or the time served in custody at the time of sentencing, with sentences for all counts to run concurrently. Defendant may not recommend a sentence any lower than 84 months.

[1] This variance is in consideration of Defendant's expeditious resolution of the case and waiver of appeal.



Def. Initials DZ

G. SPECIAL ASSESSMENT, FINES, AND FORFEITURE

a. Special Assessment. The parties will jointly recommend that defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing.

b. Fine. The parties will not recommend imposition of a fine due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program, likely would exceed the amounts that could reasonably be expected to be collected.

c. Forfeiture. Defendant agrees that the provisions of the attached Forfeiture Addendum shall govern forfeiture in this case.

H. SUPERVISED RELEASE

Defendant will not recommend a term of supervised release of less than five years. The government may recommend any term of supervised release. If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

**XI**

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order. The only exception is that Defendant may collaterally attack the conviction or sentence on the basis that defendant received ineffective assistance of counsel. If defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.



Def. Initials DZ

## XII

## BREACH OF THE PLEA AGREEMENT

Defendant and defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

A. Failing to plead guilty pursuant to this agreement;

B. Failing to fully accept responsibility as established in Section X, paragraph B, above;

C. Failing to appear in court;

D. Attempting to withdraw the plea;

E. Filing any substantive motion after the plea is entered;

F. Failing to abide by any court order related to this case;

G. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

H. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If defendant breaches this plea agreement, defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed,



Def. Initials DZ

or not filed as a result of this agreement (defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for defendant's breach.

Additionally, if defendant breaches this plea agreement: (i) any statements made by defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any prosecution of, or any action against, defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the defendant. Additionally, defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

**XIII**

**CONTENTS AND MODIFICATION OF AGREEMENT**

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.



Def. Initials DZ

XIV

**DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//



Def. Initials DZ

**XV**

**DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is defendant's independent opinion, and defendant's counsel did not advise defendant about what to say in this regard.

Respectfully submitted,

ADAM GORDON
United States Attorney

5.6.2026
DATED

FRANCISCO A. NAGEL
Assistant U.S. Attorney

4/16/2026
DATED

HECTOR JESUS TAMAYO
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE.**

4/16/26
DATED

DANIEL ZAMBRANO
Defendant

Approved by:

*/s/ James Redd*
James Redd
Assistant U.S. Attorney



Def. Initials